**In re Felix A. HUGHES.**

**Bankruptcy No. 90–25088–B.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

March 4, 1992.

James R. Sheeran, Norfolk, Va., for debtor.

Marcus, Santoro & Kozak, Portsmouth, Va., John B. Raftery, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Susan L. Watt, Asst. U.S. Atty., Norfolk, Va., for I.R.S.,

Debera F. Conlon, Asst. U.S. Trustee, Norfolk, Va.

## OPINION AND ORDER REGARDING I.R.S. CLAIM

HAL J. BONNEY, Jr., Bankruptcy Judge.

Dr. Felix Hughes is a radiologist residing in Virginia Beach, Virginia, who on October 25, 1990, filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Virginia. On March 4, 1991, the Internal Revenue Service (IRS) filed a Proof of Claim (Claim # 23) against the estate contending that Dr. Hughes is indebted to the United States for $85,000, due to his involvement in the following corporations: HSH Properties, Inc.; Wayne County Co-op, Inc. (Co-op); WCC Trucking, Inc.; WCC Logging; and Big Buck Logging, Inc. The IRS seeks to collect, under 26 U.S.C. § 7501(a), Trust Fund taxes, which had been withheld from employees' wages at these corporations, but not paid to the I.R.S. The tax claim is based on 100% penalty liabilities, under 26 U.S.C. § 6672, for the fourth quarter of 1990 in the estimated amount of $17,000 for each corpora-tion. These claims are unsecured priority claims under § 507(a)(7) and were estimated because these corporations failed to file tax returns for the tax period ending on December 31, 1990. Dr. Hughes has filed an objection to the I.R.S. claim under § 502 of the Bankruptcy Code and Bankruptcy Rule 3007, claiming that he is not a responsible person for the Trust Fund tax liabilities for any of these entities.

The history of the corporations is quite complex and financial records lacking. However, all the corporations involved in this dispute were incorporated in and solely conducted business in Mississippi. Secondly, each corporation withheld income and FICA taxes from its employees' wages and failed to remit these to the IRS.

In February 1986 Dr. Hughes entered a partnership with his brother, David Hughes, and Dr. Edwin Strickland, both of whom live in Mississippi. One year later, in February 1987, the three partners incorporated and created HSH Properties, Inc. (HSH), with each of the former partners owning 1,000 shares. Dr. Hughes was also an officer and director of HSH. The corporation's purpose was to buy land, grow timber, and then sell the timber off the land to pay for the land. HSH would contract with a logger who would cut the trees and bring them to a sawmill and either the logger or the sawmill owners would pay HSH for the timber. Besides ownership of undeveloped timberland, HSH also owned "Pinetree Cleaners," a dry-cleaning business, and "Silver Tanning Center." Between 1986 and 1988, HSH acquired six pieces of property and managed to break even.

In the beginning of 1988, HSH's owners became interested in purchasing Wayne County Co-op and created Wayne County Co-op, Inc., (Co-op) to achieve this purpose. The Co-op began business on April 14, 1988, as a farmers' supply business. Though Dr. Hughes owned 23% of the common stock, he was not an officer or director. The corporation's directors were David Hughes, Dr. Strickland, and Lee Ballard, who had worked for the Wayne Coun-

ty Co-op before it was purchased and was retained for his experience.

WCC Logging was formed on March 21, 1989, and was managed through the Co-op. Conducting business solely on HSH properties, WCC Logging's primary purpose was to merchandise, cut, and transport timber to the mills. Brother David Hughes was the president; Dr. Hughes was the vice-president and one of the directors, owning 26.6% of WCC Logging's common stock.

In order to reduce insurance costs on workmen's compensation, WCC Logging was split into two corporations: Big Buck Logging, Inc., and WCC Trucking, Inc. All the assets of these two companies were actually held by the Co-op and the only true distinction between the companies was the separate payrolls. Dr. Hughes owned 23% of the common stock of WCC Trucking, which was formed on May 24, 1989, and was the president, as well as one of the four directors. Big Buck Logging, Inc., came into existence on June 23, 1989, and, though Dr. Hughes was not a corporate officer, he was one of four directors and owned 23% of the common stock.

These various corporations encountered a number of serious financial difficulties. In October 1988 the Co-op received a number of bad checks from one customer amounting to a $747,977.57 loss, which the Co-op has been unable to recover. Secondly, Mr. Ballard had gravely overextended himself in running WCC Logging. Further compounding these financial problems, in December 1989 and early 1990 torrential downpours in Mississippi made logging impossible and the companies could not generate money to make payments on loans. Though Dr. Strickland informed Dr. Hughes late in 1989 that tax liabilities existed, no one knew the extent of the liabilities and these tax liabilities were deferred in order to cover daily expenses and loans. It was not until April or May 1990 that the officers of the corporations became aware of the dollar amount owed in payroll taxes for the corporations.

On July 19, 1990, the Co-op filed a Chapter 11 Bankruptcy petition. The Co-op continued its operations while in bankruptcy until October 9, 1990, when Dr. Hughes, David Hughes, and Dr. Strickland decided to sell off the assets of the Co-op, WCC Logging, WCC Trucking, and Big Buck Logging. The logging enterprises ended between August and September 1990 and the Co-op ceased operations in early January 1991.

In objecting to the I.R.S. claim, Dr. Hughes denies liability for the tax obligations because he was never responsible for collecting, accounting for, or paying the withheld taxes to the I.R.S. To prove his lack of responsibility for these tax debts, Dr. Hughes primarily relies on never having possession or control of the corporations' checkbooks. Secondly, he was in Virginia and never involved in the day-to-day management of the corporations, meaning he never hired or fired anyone, never took part in disbursing payroll checks, and never decided which creditors would be paid first.

The I.R.S. considers Dr. Hughes liable for the withholding taxes, primarily, because he was a corporate officer in each of the corporations that owed taxes, except for Big Buck and the Co-op. However, while not an officer, Dr. Hughes was a director in Big Buck. Furthermore, Dr. Hughes became aware that the taxes were not being paid in early 1991. Though he voiced concerns about this, Dr. Hughes decided to continue with the operations after the other corporate officers and directors agreed to his demands of (1) installing Mr. Grafton, an accountant, to oversee Mr. Ballard and (2) for better corporate documentation. Finally, Dr. Hughes backed the decision to fire Mr. Ballard in late 1991, thus participating in some corporate decisions.

In total, however, it cannot be factually concluded that Dr. Hughes controlled the entities, managed them or was in any sense in control. He had absolutely no check writing authority. Factually, he was not a "responsible person" in the ordinary operation of these entities.

Employers are required to withhold income and FICA taxes from their employees' wages. *Maggy v. United States*, 560

F.2d 1372 (9th Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978), *citing* 26 U.S.C. §§ 3101–02. The tax that the employer collects is then held in a trust fund and paid on a quarterly basis to the United States. 26 U.S.C.A. § 7501(a). The Internal Revenue Code imposes a penalty if the business fails to remit the trust fund taxes to the United States. 26 U.S.C. § 6672.

> If a corporate employer defaults with respect to sums withheld by it, a corporate officer or employee may be liable personally for the penalty prescribed by § 6672[1], which is generally called the "100% penalty", if during the period involved he was a "responsible person" under § 6671(b)[2], and if he acted "willfully in respect of the tax liability of the employer."

*Hartman v. United States,* 538 F.2d 1336, 1340 (8th Cir.1976). Only a "responsible person" who "willfully" fails to pay the trust fund taxes will be held liable for the 100% penalty. The burden of proof is on the taxpayer, not only regarding the amount of the IRS' claim, but also in showing that he was not a "responsible person" or that he did not "willfully" refuse to pay the taxes. *United States v. Pomponio,* 635 F.2d 293, 296 (4th Cir.1980), *see also, Cooper v. United States,* 539 F.Supp. 117 (E.D.Va.1982), *aff'd,* 705 F.2d 442 (1983).

■ There are two requirements which have to be met before an individual will be held accountable for the 26 U.S.C. § 6672 penalty. First, the individual must be a "responsible person," meaning he is required to "collect, truthfully account for, and pay over" the withheld taxes. 26 U.S.C. § 6672(a); *see also, O'Connor v. United States,* 956 F.2d 48, 50 (4th Cir. 1992). Second, this "responsible person"

must have "willfully failed to insure that the withholding taxes were paid." *Id.* Only if both these requirements are met will an individual be accountable for the penalty tax. To avoid liability, Dr. Hughes must prove that he was not a "responsible person" to collect and pay the withholding taxes for the corporations or that, even if he was a "responsible person", he did not willfully fail to remit these payments to the United States.

■ Under 26 U.S.C. § 6672, an individual is not a "responsible person" just because he happens to be a corporate officer. *United States v. Pomponio,* 635 F.2d 293, 296 (4th Cir.1980); *Dudley v. United States,* 428 F.2d 1196, 1201 (9th Cir.1970); *Monday v. United States,* 421 F.2d 1210, 1214 (7th Cir.1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Additional factors are needed before Section 6672 liability is hoisted upon an individual. In *Cooper v. United States,* 539 F.Supp. 117 (E.D.Va.1982), *aff'd,* 705 F.2d 442 (1983), the Court enumerates some other factors to consider in determining liability for these penalty taxes.

> Other court-developed criteria for identifying a "responsible person" are: the identity of the individual who signed the quarterly tax returns and other tax returns; the identity of the officers, directors, and principle stockholders; the identity of the individual who hired and fired employees; and the identity of the individual who was in control of the financial affairs of the corporation.

*Id.* at 120. In deciding whether an individual is a "responsible person," courts consider the authority that individual exercised within the business.

---

**1.** 26 U.S.C. § 6672(a) reads:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not

collected, or not accounted for and paid over. . . .

**2.** 26 U.S.C. § 6671(b) reads:

The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

The most important consideration, however, as to whether an individual is a "responsible person" is whether he had control of the corporate checkbook. Before a person will be held accountable for willfully failing to remit withholding taxes to the United States, that person must have had "authority to direct or control the payment of corporate funds" during the reporting period at issue. *Id.* at 119–120. Usually, a "responsible person" is a corporate officer with general control over business affairs and a voice in deciding which creditors are paid and how funds are disbursed. *Monday*, 421 F.2d at 1214–15. "One who has significant but not necessarily exclusive control over which bills should or should not be paid is a "responsible person." *Cooper*, 539 F.Supp. at 120. Involvement in the day-to-day affairs of the business and, more importantly, participation in deciding which creditors are paid and which are not is determinative of whether an individual will be liable for the failure to pay withholding taxes.

■ Applying this case law to Dr. Hughes' factual situation, it is clear that he is not a "responsible person" under 26 U.S.C. § 6672. The parties stipulated that Dr. Hughes never had control of any of the corporate checkbooks, nor did he ever sign or have the power to sign any checks on behalf of the corporations. Dr. Hughes never signed a tax return for these corporations and was never involved in daily management, such as hiring and firing employees or fixing their compensation. Most importantly, Dr. Hughes did not negotiate with any creditors or decide which creditors should be paid first.

The IRS claims Dr. Hughes is a "responsible person" because he was a corporate officer or director in all the corporations except the Co-op. He was the president of WCC Trucking and the vice-president of WCC Logging. Though these are executive corporate positions, WCC Trucking's by-laws charged Dr. Hughes with general supervision powers, which he did not exercise, and WCC Logging's by-laws specified no duties for the vice-president. The fact that an individual is a corporate officer does not automatically make him liable for

Section 6672 penalty taxes. (*See Pomponio*, 635 F.2d at 296.) Dr. Hughes also participated in some corporate decision-making, such as the decision to fire Mr. Ballard, and the decision, jointly-made with the other officers and directors, to continue with the business operations even though he knew that taxes were owed to the United States. Despite these contentions, however, the facts overwhelmingly show that Dr. Hughes never controlled or directed the payment of corporate funds for any of these corporations and, therefore, Section 6672 liability does not attach.

The IRS relies solely on *Maggy v. United States*, 560 F.2d 1372 (9th Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978), but such reliance is misplaced. Maggy was the president, director, and chairman of the board of Edmap Industries, Inc. (Edmap). He appealed the District Court for the Northern District of California's decision finding him liable for the Section 6672 penalty taxes that Edmap owed due to its failure to pay withholding taxes during the quarter extending from May to June 1967. *Id.* at 1373. On April 6, 1967, Maggy was elected Edmap's president with the knowledge that the accounts containing the withholdings from the employees' wages were overdrawn. *Id.* at 1374. On June 22, 1967, Maggy was forced to resign, but he remained chairman of the board. Though he did not realize it, he also remained, until July 18, 1967, an authorized signator on corporate bank accounts. *Id.* However, after June 22, Maggy never wrote any checks and he never decided which creditors would be paid. *Id.* On July 31, 1967, withholding taxes in the amount of $32,060.49 became due. Maggy was re-elected president on August 2, 1967, and never made an effort to pay these taxes. *Id.*

The Ninth Circuit Court of Appeals decided that Maggy's liability for the withholding taxes only extended from May 1 to June 22, 1967. *Id.* at 1376. After June 22, 1967, Maggy was "stripped of all significant authority," even though he was still chairman of the board and he still had the authority to sign checks, albeit unknowingly. *Id.* at 1375. Therefore, he was not liable for the withholding taxes after June

22, 1967. This Court finds Dr. Hughes not liable for the withholding taxes for the same reasons. He had no significant authority within the corporation and, furthermore, unlike Maggy, he never had the authority to write checks.

Though this Court has decided that Dr. Hughes is not a "responsible person" under 26 U.S.C. § 6672, and is therefore not liable for the withholding taxes, it also finds that Dr. Hughes did not "willfully" fail to pay the United States the amounts withheld from employees' wages. A person acting "willfully" is "[o]ne who acts intentionally, conscientiously and voluntarily ..." *Cross v. United States*, 311 F.2d 90, 94 (4th Cir.1962), *citing Bloom v. United States*, 272 F.2d 215, 223 (9th Cir.1959), *cert. denied* 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960). Since Dr. Hughes had no control over any of the corporate checkbooks, he did not "willfully" fail to remit the withholding taxes to the United States, even though he knew that they were owed. There is absolutely no evidence he acted willfully.

## CONCLUSION

Before an individual is held accountable for the Section 6672 "penalty" tax, it must be determined that he was a "responsible person", meaning that he was "required to collect, truthfully account for, and pay over" the withheld taxes. Secondly, this "responsible person" must have "willfully", meaning intentionally and voluntarily, failed to remit these funds to the United States. In this case, Dr. Hughes was not a "responsible person", because he did not control the corporate checkbooks, did not decide which creditors would be paid, and did not exercise any day-to-day management of the corporations. Because he had no significant authority in running the corporations, Dr. Hughes is not liable for the Section 6672 "penalty" taxes.

The objection to the claim of the Internal Revenue Service is sustained.

IT IS SO ORDERED.