635 F.2d 293
 80-2 USTC P 9820
 UNITED STATES of America, Appellant,
v.
Louis POMPONIO, Jr., Mary Lou Pomponio, Peter Pomponio,
Carolyn Pomponio, PaulPomponio, Appellees,
and
Judith BROCKSMITH (formerly Judith Pomponio), Defendant,
v.
Charles J. PILUSO, Third Party Defendant.
 No. 80-1080.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 9, 1980.
Decided Nov. 26, 1980.
 
 Wynette J. Hewett, Tax Div., Dept. of Justice, Washington, D.C. (Justin W. Williams, U. S. Atty., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellant.
 Walter T. Charlton, Washington, D.C. (Charlton & Tupling, Lawrence D. Huntsman, Washington, D.C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and PHILLIPS, Circuit Judge.
 FIELD, Senior Circuit Judge:
 
 
 1
 The United States filed actions against three brothers, Peter, Paul, and Louis Pomponio, respectively, and their wives,[1] seeking judgments stemming from (1) certain income tax liabilities, (2) assessments made against them under section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672,[2] with respect to withholding taxes on wages owed by various corporations owned and controlled by them, and (3) their liability on a promissory note under the terms of which they secured the payment of certain corporate tax liabilities. In the complaint filed against Peter Pomponio, Count I sought judgment against him for income taxes assessed for the years 1972 and 1973 in the amount of $34,662.67; Count II sought judgment based upon section 6672 assessments in the amount of $771,481.51; and Count III sought judgment on a promissory note which had been executed by the three brothers and their wives in the amount of $1,859,609.61. In the complaint filed against Paul Pomponio Count I sought judgment for income taxes for the year 1972 in the amount of $20,250.11; Count II sought judgment under section 6672 assessments in the amount of $984,399.64; and Count III sought judgment on the promissory note. In the complaint against Louis Pomponio Count I sought judgment for income taxes assessed for the years 1972 and 1973 in the amount of $30,998.19; Count II sought judgment under section 6672 assessments in the amount of $1,605,229.55; and Count III sought judgment on the promissory note. Following a consolidated trial, the district judge entered judgment in favor of the Government with respect to the income tax liabilities under Count I of each complaint, and on Count III with respect to liability on the promissory note. However, with the exception of one item, the court dismissed Count II of each complaint relative to the section 6672 assessments. The Government filed a motion to alter or amend the judgment which was denied by the district court and the Government has appealed.
 
 
 2
 The facts relative to the section 6672 assessments may be summarized as follows. For several years the Pomponio brothers were stockholders, officers and directors of a group of corporations which were engaged primarily in the real estate development business. Among these were National Realty and Construction Company, Inc., which acted as the general contractor for various construction projects; Art Electric Corporation which was the contractor for the electrical work on the projects; Rosslyn Construction Company, Inc., which was the contractor for carpenter work. K. M. Adams of Virginia, Inc., which was the roofing and sheet metal contractor; National Elevator Corporation which constructed and maintained elevators; Hammett Stone Company, Inc., which was the masonry contractor; Atlantic Mechanical Contractors, Inc., which installed the heating, airconditioning and plumbing in the project; and Pomponio Brothers Realty and Construction Company, Inc., which was in the business of leasing and maintaining the buildings after they had been completed. In 1971 and 1972 these corporations defaulted in the payment of income and Federal Insurance Contributions Act taxes withheld from employees wages and in the payment of the employer's share of federal employment taxes. The aggregate of these delinquent tax liabilities was $1,859,609.61, and in October of 1972 the corporations and their affiliates entered into an agreement with the Internal Revenue Service relative to the payment of these taxes.
 
 
 3
 The agreement provided, among other things, that the corporations would pay the delinquent taxes on January 30, 1973, and would pay current taxes in a timely manner. The Service agreed not to file notices of tax liens or seek to collect the delinquencies during the period of the agreement. Incident to the agreement, the corporations executed a promissory note in the total amount of the delinquent tax liabilities, and the Pomponios, in their individual capacities, and their respective wives, executed a note in the face amount of $1,859,609.61 promising upon default to pay the aggregate amount of the delinquencies.
 
 
 4
 Thereafter, the corporations and the individual taxpayers defaulted on their promises to pay these delinquencies, and on September 27, 1976, assessments under section 6672 were made with respect to the subject corporations as follows:
 
 
 5
 CORPORATION AMOUNT
 ----------- ------
National Center Corp. $ 10,642.37
Rosslyn Const. Co., Inc. 284,571.56
K. M. Adams of Virginia, Inc. 64,897.50
Pomponio Bros. Realty &
Constr. Co., Inc 212,915.13
National Realty & Constr. Co.,
Inc. 676,078.79
National Elevator Corp. 51,089.70
Hammett Stone Co., Inc. 52,594.47
Atlantic Mechanical Constractors,
Inc. 167,676.68
Art Electric Corp. 84,760.35
 
 
 6
 The assessments against Louis Pomponio covered the delinquencies of all of these corporations and aggregated $1,605,229.95, which was reflected in Count II of the complaint filed against him. The assessment against Peter Pomponio was confined to the liability of National Center Corporation, National Realty and Art Electric Corporation in the aggregate amount of $771,481.51, which was reflected in Count II of the Government's complaint against him. The assessment against Paul Pomponio covered National Center Corporation, Pomponio Brothers Realty and Construction Co., Inc., National Realty and Art Electric Corporation, aggregating $984,399.64 which was reflected in Count II of the complaint filed against him.
 
 
 7
 At the time these actions were filed all of these liabilities remained unpaid, and at trial the Government introduced into evidence the certificates of assessment relative to the section 6672 delinquences. The Government stipulated that with the exception of the National Center Corporation's liability in the amount of $10,642.37, all of the corporate delinquencies upon which assessments were made under section 6672 which were reflected in Count II of the three complaints were included in the aggregate of corporate delinquencies covered by the note which had been executed by the taxpayers and their wives and which was the subject of Count II of the complaints. The district judge entered judgment in favor of the Government under Count II for the amount of the assessment stemming from the liability of National Center Corporation, but dismissed the remaining items covered by Count II. In declining to enter judgment on these items, the Court stated:
 
 
 8
 If you want the grounds for dismissal, I will state the grounds for dismissal.
 
 
 9
 Number 1, the failure of the United States to prove any liability against the defendants under Count 2;
 
 
 10
 Secondly, a failure to assert any liability under Count 2 of the complaint;
 
 
 11
 Thirdly, that each item covered in Count 2 of the complaint is already awarded and covered in the judgment entered by the Court under Count 3 of the complaint filed in each of these cases, and that the United States is not entitled to double judgment against individuals, corporations, or a combination of them, for single obligations due and owing to them, and for any other reason that may appear to the Court if it becomes proper to file a written statement of why it was done.
 
 
 12
 APP., at 253.
 
 
 13
 We agree with the Government that the district court erred in its conclusion that the Government had failed to assert or prove any liability against the defendants under Count II of the respective complaints. The complaints specifically itemized the assessments made against each of the defendants as a responsible person of the listed corporations within the meaning of section 6672, and charged that the amounts thereof were due and owing to the United States. The Government established a prima facie case in support of the tax liability charged in the complaints when it introduced into evidence the certified copies of the certificates of assessment. Psaty v. United States, 442 F.2d 1154 (3 Cir. 1971). The Commissioner's determination of tax liability is presumptively correct and in cases involving section 6672 liability the courts generally have held that the burden is upon the taxpayer to establish that the Commissioner's determination was erroneous. Psaty v. United States, supra; Lesser v. United States, 368 F.2d 306 (2 Cir. 1966). This presumption is not limited merely to the amount of the assessment but requires that the taxpayer demonstrate that he was not a responsible person or that his failure to pay the taxes was not willful. Brown v. United States, 591 F.2d 1136 (5 Cir. 1979); Hornsby v. Internal Revenue Service, 588 F.2d 952 (5 Cir. 1979); Anderson v. United States, 561 F.2d 162 (8 Cir. 1977).
 
 
 14
 The defendants argue, however, that under Rule 301 of the Federal Rules of Evidence[3] the presumption accorded the Commissioner's determination and assessment requires only that the taxpayer go forward with evidence to meet the presumption, and that the burden of proof rests upon the Government to prove each and every element of its case. The effect, if any, of Rule 301 upon the presumption historically accorded determinations of the Commissioner has not been mentioned or addressed in any of the cases which have been decided since the effective date of the Rules of Evidence, and while, admittedly, the new Rule could present problems in this area, it is unnecessary for us to explore them in this case. Whether the Government's prima facie case placed upon the defendants the burden of ultimate persuasion or merely of going forward with the evidence,[4] the record demonstrates that in either event the Government was entitled to prevail. In addition to its prima facie case based upon the certificates of assessment, the Government presented the testimony of the accountant who supervised the financial accounts of all of the subject corporations. The accountant testified that the corporations had a centralized accounting department, and that they encountered cash-flow problems which required a transfer of funds between the corporations to meet current obligations. He testified that he informed each of the defendants that there were insufficient funds to meet both the tax obligations and their general creditors, and that the defendants directed him concerning which obligations should be paid. The three defendants were also called as witnesses by the Government, and their testimony supported the conclusions that they were responsible persons within the meaning of the statute and that, being fully aware of the financial difficulties of their corporations, they voluntarily and intentionally preferred other creditors over the United States.[5] Upon this record, under any theory of the burden of proof, the Government carried the day and was entitled to judgment under Count II.
 
 
 15
 Finally, in refusing to enter judgment in favor of the Government on Count II, the district court observed that the items in that Count were covered by the judgment entered on the note under Count III, and stated, "that the United States is not entitled to double judgment against individuals, corporations, or a combination of them, for single obligations * * *." The defendants argue that in reaching this conclusion the district court properly applied the doctrine of "election of remedies." We do not agree. In Newport News Shipbuilding & Dry Dock v. Director, 4th Cir., 583 F.2d 1273, 1277 (1978), we noted
 
 
 16
 that in the absence of express legislative declaration to the contrary, the courts have been reluctant to extend this relatively harsh doctrine * * * In any event, it is inapplicable where, as here, the second remedy which is pursued following an alleged "election" is not theoretically irreconcilable with the first, and does not require a claimant to assume a position inconsistent with that which he took in his initial quest for relief. (Citations omitted).
 
 
 17
 There is nothing irreconcilable in the Government's position in the present case that it is entitled to judgment on the note executed by the defendants and also judgment against them under section 6672. The note was executed to secure payment of the tax obligations of the corporations while the assessments under section 6672 represented primary obligations of the defendants. Their individual liability under the statute is separate and distinct from that of the corporations, and as the court stated in Kelly v. Lethert, 362 F.2d 629, 635 (8 Cir. 1966):
 
 
 18
 The result of Section 6672 is thus to make the responsible officers of the corporation, as well as the corporation itself, equally liable as co-debtors to the Government, and the Government may proceed against either in the order best suited in its judgment to collect the unpaid tax.
 
 
 19
 Nor do we think there was any basis for the court's concern that the Government might seek a double recovery. On this point, counsel for the Government have directed our attention to the policy of the I.R.S. to collect the amount of the tax only once. This administrative policy[6] was recognized in Brown v. United States, 591 F.2d 1136, 1142-1143 (5 Cir. 1979), where the court stated:
 
 
 20
 Because the government has stated that its policy is to collect the total penalty only once, and that it will not attempt to exact that penalty separately and cumulatively from each responsible person, it is unnecessary for us to decide whether it would be entitled to multiple collections of that liability. However, we note that the Eighth Circuit has held that the government is entitled to only one satisfaction, Kelly v. Lethert, 8 Cir. 1966, 362 F.2d 629, 635, and that this court has previously stated:
 
 
 21
 While the penalty imposed by section 6672 is distinct from and not in substitution of the liability for taxes owed by the employer, it brings to the government only the same amount to which it was entitled by way of the tax.
 
 
 22
 Newsome v. United States, supra, 431 F.2d at 745 * * *. Double recovery by the government is not necessary to fulfill § 6672's primary purpose-protection of government revenues.
 
 
 23
 In addition to this administrative policy it occurs to us that the fears of the district court can be allayed by including appropriate language in the judgment order.
 
 
 24
 Accordingly, this case is remanded with instructions to grant the Government's motion to amend the judgment order on Count II consistent with this opinion.
 
 
 25
 REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The district court stayed the action against Judith Brocksmith, former wife of Paul Pomponio, since her estate was in bankruptcy; no judgment was entered against her
 
 
 [2]
 On the dates the assessments were made against these defendants, 26 U.S.C. § 6672 read as follows:
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.
 Section 6672 was amended November 10, 1978, Pub.L. 95-628, 92 Stat. 3633. The existing provisions of section 6672 were designated in the amendment as subsection (a) "General rule," and the amendment made no change in the statutory language.
 
 
 [3]
 Rule 301 of the Rules of Evidence reads as follows:
 In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
 Pub.L. 93-595, § 1, Jan. 2, 1975, 88 Stat. 1931.
 
 
 [4]
 In our own circuit the breadth of the presumption appears to have been somewhat limited. In reviewing a decision of the Tax Court in Stout v. C. I. R., 4th Cir., 273 F.2d 345, 350 (1959), we observed:
 The presumption of correctness is procedural. It transfers to the taxpayer the burden of going forward with evidence, but it disappears in a proceeding to review the assessment when substantial evidence contrary to the Commissioner's finding is introduced. (Footnote omitted).
 We reiterated our position in Foster v. C. I. R., 4th Cir., 391 F.2d 727, 735 (1968), as follows:
 Our understanding of the law with regard to this issue is as follows: The burden of proof is on the Commissioner to show that the taxpayer received income. This burden is initially satisfied, however, by the fact that the Commissioner's deficiency determination is presumed correct. The burden is thus on the taxpayer to prove the incorrectness of the deficiency determination. This burden is procedural and is met if the taxpayer produces competent and relevant evidence from which it could be found that he did not receive the income alleged in the deficiency notice. In other words, the taxpayer at this point has the burden of producing evidence or of going forward with the evidence. If this burden is met, the burden of proof shifts back to the Commissioner to prove the existence and amount of the deficiency. (Footnotes omitted).
 Our treatment of the presumption was the subject of some criticism, see, e. g., United Aniline Company v. C. I. R., 316 F.2d 701 (1 Cir. 1963); United States v. Rexach, 482 F.2d 10, 16 (1 Cir. 1973); and in Higginbotham v. United States, 556 F.2d 1173, 1176 (4 Cir. 1977), Judge Haynsworth, recognizing that some confusion existed regarding the proper interpretation of the language of Foster, clarified our position with the following observation:
 As suggested in Rexach, supra, the discussion of burden or proof in Foster applies only to the procedural effects of the presumption that an assessment is accurate. Once a taxpayer has introduced evidence sufficient to support a finding that the assessment is wrong, Foster prevents the Government from simply resting on the presumption and requires it to come forward with some evidence sufficient to support a conclusion that the assessment is correct in spite of the taxpayer's evidence. But the taxpayer continues to bear the risk of nonpersuasion. Foster does not relieve the taxpayer of the burden of proving the Government's assessment wrong by a preponderance of the evidence. (Footnote omitted).
 
 
 [5]
 This intentional preference of other creditors was sufficient to establish the element of willfulness within the statute. See Feist v. United States, 607 F.2d 954, 961 (Ct.Cl.1979)
 
 
 [6]
 The Supreme Court referred to this established policy in United States v. Sotelo, 436 U.S. 268, 279-280 n.12, 98 S.Ct. 1795, 1802-1803, 56 L.Ed.2d 275 (1978):
 Rather than predicating liability on ability to pay, § 6672 is based on the premise that liability should follow responsibility. * * * In a recent survey of IRS practices with regard to § 6672, the Comptroller General of the United States wrote:
 "IRS uses the 100-percent penalty only when all other means of securing the delinquent taxes have been exhausted. It is generally used against responsible officials of corporations that have gone out of business .... (I)t is IRS policy that the amount of the tax will be collected only once. After the tax liability is satisfied, no collection action is taken on the remaining 100-percent penalties."