Bernard JOHNSON and Randy
Dixon, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1:92–0193.

United States District Court,
S.D. West Virginia,
Bluefield Division.

July 29, 1993.

James R. Sheatsley, Gorman, Sheatsley & Co., Beckley, WV, for plaintiffs.

Carol Casto, Asst. U.S. Atty., Charleston, WV, David Hickman, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## OPINION

FABER, District Judge.

### I. Statement of the Case

Plaintiffs Bernard Johnson ("Johnson") and Randy Dixon ("Dixon") brought this civil action against the United States seeking refund of $100.00 each in payments made upon federal tax assessments pursuant to 26 U.S.C. § 6672 ("section 6672"), entry of an order abating any and all claims relative to unremitted withheld tax liabilities of Big J Enterprises, Inc. ("Big J"), and entry of an order directing the United States to release liens arising from unremitted withheld tax liabilities of Big J. The United States asserted a counterclaim to reduce to judgment the unpaid portions of section 6672 assessments in the amount of $38,675.06 plus interest. The assessments were made against Johnson and Dixon as responsible officers of Big J for the fourth quarter of 1987.

Prior to September 1987 the owner of Big J, a coal mining company, was Jerry L. Justice, Jr. ("Justice"). On or about September 25, 1987, Justice entered into a written contract with Johnson and Dixon, whereby Johnson and Dixon were each to receive a one-third ownership interest in Big J. As consideration for this contract, Johnson and Dixon supplied a $30,000 wage bond for Big J and each went to work for the company. Johnson became mine superintendent, directly supervising the day shift and maintaining general supervisory authority over all three shifts. Dixon became supervisor of the evening shift. Justice retained a one-third ownership interest and continued to be active in the company as maintenance superintendent. All three of the owners were signatories to Big J's bank accounts. Both Johnson and Dixon became involved in the hiring of personnel. Justice continued to have general control over Big J's financial operations, although Johnson and Dixon participated therein by signing checks and making deposits.

On November 26, 1987, Justice tendered to Johnson a letter of resignation as President of Big J back-dated to September 25, 1987. The letter also indicated that Justice was giving his stock in Big J to Johnson and

Dixon. After Justice's departure from Big J, Johnson and Dixon assumed full responsibility for the operations of Big J, including payment of all creditors, and were the only two signatories on the corporate checking account.

While the contract entered into by Justice, Johnson and Dixon indicated Johnson and Dixon would be issued shares of stock in the corporation, they never received such shares of stock. At the time Justice left the corporation, Johnson and Dixon discovered for the first time that Big J had significant financial problems, including unpaid withholding tax liability, and they determined that the business, due to its financial condition, was no longer viable.

While there was some confusion as to whether Justice or his father was the actual owner of Big J at the time of the agreement with plaintiffs, it is clear that both of the Justices got out of the business and turned it over completely to Johnson and Dixon by late November 1987. Johnson and Dixon contend that Justice remained in substantial control of the business until he left around Thanksgiving of 1987. While plaintiffs did sign most of the checks while Justice remained with the company, they contend that they did so at Justice's direction. Johnson and Dixon also contend that Justice misled them by falsely representing to them that the company had no debts at the time they agreed to buy into the company. When Justice left the corporation, the plaintiffs went through the desk drawers and found bills that were unpaid and discovered information leading them to believe that tax deposits which were made during the fourth quarter of 1987 had been directed to be applied to taxes that had accrued prior to that date.

Late in 1987 the State of West Virginia appropriated a bond posted for the purpose of protecting wage claimants, as well as a check due the corporation from its regular purchaser of coal. The Department of Labor used these monies to pay current wages and additionally applied approximately $28,000 against old medical bills owed by Justice which he had incurred before the plaintiffs bought into the business. These monies were disbursed directly by the West Virginia

Department of Labor and plaintiffs contend this sum of money is nearly equivalent to the amount of unremitted withholding taxes at issue. In January 1988 when they closed down Big J's business, Johnson and Dixon made some small payments to certain creditors of the company and paid themselves $30,000 from proceeds of coal sold by Big J. Plaintiffs viewed this payment to themselves as compensation for the $30,000 in certificates of deposit seized by the West Virginia Department of Labor pursuant to a letter of credit securing the wage bond plaintiffs had entered into in order to obtain their ownership interest in Big J.

The United States has moved for summary judgment contending that, upon the undisputed facts of this case, the plaintiffs are responsible persons under section 6672 and wilfully failed to pay the employment taxes in question. Plaintiffs resist this motion for summary judgment, arguing that the following issues involve questions of fact: (1) Johnson and Dixon were not responsible persons for a substantial portion of the calendar quarter in question; (2) at the time Johnson and Dixon became fully responsible for the company's affairs, they ascertained for the first time the financial difficulties of the corporation and did not make inappropriate efforts to unduly continue the operation; (3) during the portion of the calendar quarter in question in which plaintiffs contend they were not responsible parties, Justice caused current revenues generated from coal sales to be paid and applied against antecedent tax debts; (4) the West Virginia Department of Labor, at the cessation of business of Big J, took direct possession of the remaining cash assets and caused such money to be expended on old non-priority liabilities of either Big J or Justice.

## II. *The Standard for Summary Judgment*

 Summary judgment is appropriate only when, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Miller v. Leathers*, 913 F.2d 1085 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100

(1991). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The entry of summary judgment is, upon motion, mandated against a party who fails to make a showing sufficient to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Numerous cases hold that where a taxpayer is challenging an assessment under section 6672, the government's assessment of the amount owed is presumptively correct and the taxpayer bears the burden of proving that the assessment is erroneous. The taxpayer also bears the burden of proving, by a preponderance of the evidence, that he is either not a responsible person under the statute or that he did not wilfully fail to collect, account for, or pay to the government the withholding taxes when due. *See, for example, O'Connor v. United States*, 956 F.2d 48 (4th Cir.1992); and *United States v. Pomponio*, 635 F.2d 293 (4th Cir.1980). Even where, as here, the United States counterclaims for the delinquent taxes, the taxpayer retains the burden of proof on the counterclaim, in light of the fact that the government's assessment is presumed to be correct. *Morgan v. United States*, 937 F.2d 281 (5th Cir.1991); *Ruth v. United States*, 823 F.2d 1091 (7th Cir.1987); *Sinder v. United States*, 655 F.2d 729 (6th Cir.1981); *Psaty v. United States*, 442 F.2d 1154 (3d Cir.1971).

■ Therefore, since the plaintiffs bear the burden of proof at trial, they must, to defeat summary judgment in favor of the United States, adduce evidence which, if believed by a jury, would be sufficient to entitle them to relief at trial. *Morgan*, 937 F.2d at 281.

### III. *Discussion*

■ Two requirements must be met in order to hold a person liable for unpaid as-

sessments under section 6672: (1) the party must be a person required to collect, truthfully account for and pay over the tax (a "responsible person"); and (2) the responsible person must have wilfully failed to insure that the withholding taxes were paid. *O'Connor*, 956 F.2d at 50.

■ In determining whether a party is a responsible person under section 6672, the focus is on whether the party exercised authority over the business's financial affairs or general management or had a duty to do so. *O'Connor*, 956 F.2d at 51. The United States Court of Appeals for the Fourth Circuit lists the following factors as indicia of responsibility under section 6672: participation in day to day management, control over payroll, authority to disburse corporate funds, check signing authority, drawing of corporate salary, holding of corporate office or directorship, stock ownership, signing of corporate tax returns, business training, and power to hire or fire employees. *Id.* at 51.

■ The facts set forth above, which are not disputed, establish that Johnson and Dixon both meet this test at the very least as of late November 1987 when Justice left the company.* Questions of fact exist as to the degree of control Justice exercised before he left the company, but these questions of fact are not material. Justice left Big J well before January 31, 1988, when taxes for the fourth quarter of 1987 became payable. Johnson and Dixon admit that they learned withholding taxes were unpaid before the fourth quarter of 1987 had elapsed. As such, even if they did not have full authority over Big J's finances until after Justice had departed, they were under a duty to apply any available unencumbered assets to reduce Big J's payroll tax liability. *Turnbull v. United States*, 929 F.2d 173, 180 (5th Cir.1991). In *Brown v. United States*, 591 F.2d 1136 (5th Cir.1979), a corporate vice-president who did not assume exclusive control of the company's affairs until April 10, 1972, was held

* It may well be that Johnson and Dixon were jointly responsible with Justice prior to Justice's departure. The court finds it unnecessary to consider that question since Johnson and Dixon were clearly responsible after Justice's departure and, as discussed in the opinion, such responsibility occurring during part of the quarter is, upon the facts and circumstances of this case, sufficient to render them liable for the entire quarter.

responsible for failure to pay first quarter 1972 withholding taxes. The fact that the vice-president was not in a position to collect the withholding taxes out of wages paid employees during the quarter in question, the court held, did not absolve him of liability since he was responsible at the time the taxes became due on April 30 and was required at that time to devote any unencumbered proceeds from the corporation's business to discharge of the tax liability. *Id.* at 1140. Similarly, in the present case, the evidence shows that Dixon and Johnson were "responsible persons" at least at the time the payment of the delinquent taxes became due.

Accordingly, the court concludes as a matter of law, that plaintiffs were both responsible persons under section 6672, and it must now consider whether their failure to pay over the withholding taxes was wilful.

The United States Court of Appeals for the Fourth Circuit has held that intentional preference of other creditors over the United States is sufficient to establish the element of wilfulness under section 6672. *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir.1992); *Pomponio*, 635 F.2d at 298 n. 5. Liability attaches whenever a responsible person permits assets of the corporation to be disbursed, knowing the taxes are unpaid. *Cooper v. United States*, 539 F.Supp. 117, 121 (E.D.Va.1982), *aff'd.*, 705 F.2d 442 (4th Cir. 1983). Thus, the fact that the plaintiffs paid some of Big J's creditors, knowing the withholding taxes were unpaid, and further paid themselves some $30,000 in proceeds from sale of coal with such knowledge, is sufficient under these Fourth Circuit cases to establish the element of wilfulness.

The court has reviewed each of the plaintiff's arguments summarized above as to why summary judgment in favor of the United States should not be granted and finds that, in view of the case law discussed herein, none is sufficient to create a question of material fact.

Because the court finds that plaintiffs were "responsible persons" pursuant to section 6672, and that they wilfully failed to pay the tax burden for which they were responsible, the court determines that the defendant is entitled to judgment as a matter of law as to

plaintiffs' claims and upon its counterclaim. Since the government's assessment of the amount owed is presumptively correct and the plaintiffs have offered no proof that such assessment is inaccurate, summary judgment will be entered in favor of the United States upon its counterclaim in the amount of the unpaid portion of that assessment, $38,675.06, with interest thereon as provided by law. A judgment order will be entered consistent with this Opinion.