UNITED STATES of America, Plaintiff,

v.

Dennis R. REGISTER, Cola Galvin–Register, J.P. Morgan Chase, and Wachovia Bank, N.A., Defendants.

**Civil Action No. 2:09cv161.**

United States District Court, E.D. Virginia, Norfolk Division.

June 11, 2010.

---

Allie C. Yang–Green, Lawrence R. Leonard, Christopher D. Belen, for Plaintiff.

Michael P. Cotter, for Defendants, Dennis R. Register and Cola Galvin–Register.

Earl E. Farnsworth, Jr., for Defendant, J.P. Morgan Chase.

Lindsey Kelly, for Defendant, Wachovia Bank, N.A.

### OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on Plaintiff United States of America's ("Government") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Docket No. 18.) After careful consideration, and for the reasons set forth below, the Court **GRANTS** the Government's Motion for Summary Judgment.

### I. UNDISPUTED FACTS

#### A. Register's Alleged Tax Liability

Between 1999 and 2007, the Internal Revenue Service ("IRS") assessed Defendant Dennis Register ("Register") with unpaid federal income taxes for the years 1994, 1996, 1998, 1999, and 2002. The Government provided Register with notice of the assessments and demanded payment. In October 2005 and October 2007, the Government filed in the Circuit Court for the City of Chesapeake notices of federal tax liens against Register related to his outstanding tax liabilities. As of March 1, 2010, the unpaid federal taxes, together with statutory penalties and interest, owed by Register to the Government totaled $179,727.84.

#### B. Galvin's Property Interest

In March 2001, Defendant Cola Galvin–Register ("Galvin") and her son moved to Register's residence in Chesapeake, Virginia (the "Real Property"), which Register jointly owned with his then-wife, Beth Register. Defendants Register and Galvin (collectively the "Defendants") agreed that Galvin would make monthly payments of approximately $1,000 to Register, which represented roughly half of Register's monthly mortgage payment, and was also roughly the equivalent of Galvin's rent and expenses at her previous residence. Defendants further agreed that Galvin would be responsible for buying food and other household products, while Register would pay for the utilities. Defendants' arrangement was to continue as long as Galvin lived at the Real Property.

In March 2004, Register and Beth Register divorced, and she relinquished any property interest in the Real Property to Register. On April 16, 2004, Register transferred his interest in the Real Property to himself and Galvin, by then his fiancee, through a Deed of Gift. At the time the Deed of Gift was executed, the parties did not agree to exchange anything of value in consideration for the interest Galvin received in the Real Property. However, between the time she first moved to the Real Property in 2001 and execution of the Deed of Gift in 2004, Galvin made monthly payments to Register totaling approximately $40,000. At the time Register transferred his interest in the Real Property to Galvin, she was unaware of any federal tax liens encumbering the Real Property. In September 2004, Register and Galvin were married.

### II. PROCEDURAL HISTORY

On April 14, 2009, the Government filed a Complaint seeking to reduce to judgment Defendant Register's unpaid tax liabilities for the years 1994, 1996, 1998, 1999, and 2002, together with statutory penalties and interest. (Docket No. 1.) In its Complaint, the Government further seeks to foreclose the federal tax liens and force the sale of the Real Property held by Register and

Galvin to pay Register's outstanding tax debt.[1]

On April 16, 2010, the Government filed the instant Motion for Summary Judgment. (Docket Nos. 18 & 19.) Soon thereafter, on April 28, 2010, Defendants Register and Galvin jointly submitted a response to the Government's motion. (Docket No. 20.) The Government replied on May 4, 2010. (Docket No. 22.) The Court dispensed with oral argument because the facts and legal contentions were adequately presented and oral argument would not aid the decisional process.[2] The matter is now ripe for decision.

## III. STANDARD OP REVIEW

Federal Rule of Civil Procedure 56 permits summary judgment when the Court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 521–22 (4th Cir.2003); Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing that summary judgment is appropriate by providing evidence illustrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Bouchat*, 346 F.3d at 522. Once such a showing has been made, the non-moving party is not permitted to merely rest upon the pleadings, but must instead provide exhibits or sworn affidavits illustrating specific facts that remain in dispute and justify the matter proceeding to trial. *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Bouchat*, 346 F.3d at 522.

When considering affidavits and exhibits at the summary judgment stage, the facts must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The non-moving party must also receive the benefit of all reasonable inferences. *Id.* (citing *Adickes*, 398 U.S. at 158–59, 90 S.Ct. 1598). After reviewing the record, a court must assess whether, in light of the parties' burdens, "no genuine issue of material fact" exists. *Id.* at 248, 106 S.Ct. 2505. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* A material fact presents a "genuine" issue if "a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, if it appears that "a reasonable jury could return a verdict for [the non-moving party], then a genuine factual dispute exists and summary judgment is improper." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir.1996); *see also Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a

1. In addition to the federal tax liens, the Real Property owned by Register and Galvin is encumbered by deeds of trust held by Defendants J.P. Morgan Chase ("Chase") and Wachovia Bank ("Wachovia"). Pursuant to a stipulation filed with the Court on March 16, 2010, the Government, Chase, and Wachovia have agreed to the priority of the liens among themselves. (Docket No. 14)

2. The Government advised the Court that a ruling based on the briefs alone was desired. (Docket No. 26.) The Government notified Defendants Register and Galvin of its desire, although it did not obtain their consent. In any event, Defendants have not requested a hearing on this matter.

finder of fact because they may reasonably be resolved in favor of either party.").

## IV. DISCUSSION

The Government moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that (1) it has made an unrebutted *prima facie* case of Register's tax liabilities, together with statutory penalties and interest, in the amount of $179,727.84, and (2) it is entitled to foreclose the federal tax liens attached to the Real Property and have the Real Property sold to satisfy Register's unpaid tax debt. Defendants do not contest that the Government is entitled to reduce to judgment Register's outstanding tax liabilities. Rather, Defendants argue that the federal tax liens encumbering the Real Property are invalid and that the Government cannot force the sale of the Real Property because Defendant Galvin is protected, under a statutory exemption, as a "purchaser" who paid adequate and full consideration for her interest in the Real Property and had no knowledge of the federal tax liens at the time she acquired that interest. The Government, in turn, claims that although Galvin had no notice of the federal tax liens, she is not a "purchaser" because she did not provide adequate and full consideration for her interest in the Real Property at the time of transfer. However, Defendants contend that, in any event, summary judgment is inappropriate because a dispute exists with respect to a material fact at issue in the case, namely the characterization of Galvin's monthly payments to Register as adequate and full consideration. Analysis of the Government's motion properly begins by examining whether Register's unpaid tax assessments can be reduced to judgment.

## A. Judgement for Unpaid Tax Liabilities

The Government first seeks to reduce to judgment Defendant Register's outstanding tax liabilities. In a tax collection action, the Government can establish a *prima facie* case in support of tax liability by showing that an assessment has been made against a defendant. *See United States v. Fior D'Italia*, 536 U.S. 238, 242, 122 S.Ct. 2117, 153 L.Ed.2d 280 (2002) ("It is well established in the tax law that an assessment is entitled to a legal presumption of correctness-a presumption that can help the Government prove its case against a taxpayer in court."). The Government may demonstrate that an assessment has properly been made against a defendant by offering a Certificate of Assessments and Payments. *See United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir.1980) (finding that "the Government established a prima facie case in support of the tax liability ... when it introduced into evidence the certified copies of the certificates of assessment" in a case involving liability under 26 U.S.C. § 6672). Such certificates are presumed correct unless the defendant provides proof to the contrary. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *see also Pomponio*, 635 F.2d at 296 (finding presumption of correctness in case involving liability under § 6672).

In the instant action, the Government has offered Certificates of Assessment and Payments as proof that valid assessments of unpaid federal income taxes, together with statutory penalties and interest, have been made against Register for the years 1994, 1996, 1998, 1999, and 2002. (Decl. Llewellyn ¶ 3; Exs. 101–105.) As of March 1, 2010, Register had outstanding tax liabilities, together with statutory penalties and interest, totaling $179,727.84. (Decl. Llewellyn ¶ 4; Exs. 106–110.) The

Government has therefore established a prima *facie case* of Register's tax liability and the burden shifts to Register to establish a genuine issue of material fact concerning the validity of the assessments. *Pomponio,* 635 F.2d at 296; *see also United States v. Sasscer,* No. CIV. Y–97–3026, 2000 WL 1683465, at *2 (E.D.Va. Nov. 8, 2000) (finding that because the defendant has "failed to present any evidence contradicting the Internal Revenue Service's assessment or otherwise raising any issue of fact" the assessment "must be taken to be correct" and summary judgment granted). Register has failed to offer any evidence suggesting that a genuine issue of material fact exists with respect to the Government's action to reduce to judgment his federal tax assessments. Accordingly, the Government is entitled to a judgment against Register for his unpaid federal tax debt in the amount of $179,727.84.

For the reasons described above, the Court finds that the Government prevails on its Motion for Summary Judgment with respect to its action to reduce to judgment Register's outstanding federal tax liabilities.

### B. Foreclosure of Tax Liens Against Real Property

The Government next seeks to foreclose the federal tax liens against the Real Property owned by Defendants Register and Galvin in order to satisfy Register's tax liabilities. Defendants argue, in the first instance, that the federal tax liens are not valid because Galvin is protected by the applicable tax statute as a "purchaser" who had no knowledge of the federal tax liens at the time she acquired her interest in the Real Property and who provided Register with monthly payments of roughly $1,000 as consideration for her interest in the Real Property. Defendants further argue that the Government should not be allowed to foreclose its federal tax liens and force the sale of the Real Property because doing so would significantly prejudice Galvin, who is innocent of any federal tax debt and is part owner of the Real Property. Accordingly, before determining the propriety and equity of foreclosure, the Court must assess whether the undisputed facts, viewed in the light most favorable to the Defendants, establish the validity of the federal tax liens against the Real Property.

#### i. validity of federal tax liens

Section 6321 of the United States Code provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Such a federal tax lien typically arises after an assessment is made against the person, and will remain in place until the tax debt "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322; *United States v. National Bank of Commerce,* 472 U.S. 713, 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Significantly, such a lien reaches "every interest in property that a taxpayer might have." *National Bank of Commerce,* 472 U.S. at 720, 105 S.Ct. 2919; 26 U.S.C. § 6321. Under 26 U.S.C. § 6323(a), however, federal tax liens are not applicable against certain third parties, such as a "purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor," unless adequate notice of the liens has first been provided. 26 U.S.C. § 6323(a).

The Government argues that, pursuant to § 6321, because Register has failed to pay his tax debts, the federal tax liens attach to the Real Property. However, Defendants assert that the federal tax liens are invalid because Galvin is a protected "purchaser" within the meaning of

§ 6323(a). In response, the Government argues that Galvin's monthly payments of approximately $1,000 to Register do not qualify Galvin as a "purchaser" under § 6323(a). Defendants, in turn, contend that to the extent a dispute exists as to the characterization of Galvin's payments and whether she is in fact a "purchaser" within the meaning of § 6323(a), such a dispute presents a genuine issue of material fact making summary judgment inappropriate. The Government rejoins by arguing that it does not contest the facts, but rather that, as a matter of law, such payments cannot make Galvin a "purchaser" because the payments were not offered in exchange for the interest in the Real Property (either at the time Galvin moved to the Real Property in 2001, or at the time of the transfer in 2004) and, even if at the time of the transfer in 2004 the parties had decided such payments would be used as consideration, past consideration cannot support a later promise.

### a. purchaser

■■■ A "purchaser," as the term is used in 26 U.S.C. § 6323(a), is statutorily defined as a "person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6); *Ruggerio v. United States*, 153 Fed.Appx. 242, 244 (4th Cir. 2005). Accordingly, there are two requirements for being a protected "purchaser" under § 6323:(1) a lack of notice, at the time the property interest is acquired, of the federal tax liens encumbering the property, and (2) an exchange of "adequate and full consideration" for the property "which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. §§ 6323(a) & (h)(6). Once the Government has made a *prima facie* case of a lien's existence, a person seeking protection from federal tax liens as a "purchaser" has the burden of showing that she is entitled to such status. *In re Nerland Oil, Inc.*, 303 F.3d 911, 920 (8th Cir.2002); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 343 (3d Cir. 1992) (finding that a party claiming exemption under § 6323(b) as a holder in due course of a security has the burden of proving such status).

The Government agrees that Galvin did not have notice of the federal tax liens when she obtained her interest in the Real Property. Indeed, notice of the liens was first filed in October 2005, well after Galvin obtained her interest in April 2004. (Compl. ¶ 21.) Instead, the Government argues that Galvin failed the second requirement, of being a "purchaser," because she did not provide "adequate and full consideration in money or money's worth" for the Real Property. 26 U.S.C. § 6323(a).

### b. consideration

■■■ The regulation implementing these code provisions defines "adequate and full consideration in money or money's worth" as "a consideration in money or money's worth having a reasonable relationship to the value of the interest in property acquired." Treas. Reg. § 301.6323(h)–1(f)(3). "Adequate and full consideration in money or money's worth may include the consideration in a bona fide bargain purchase." *Id.* Because the statute and federal regulation do not further define the term "consideration," generally accepted principles of statutory interpretation require the Court to look to the common definition of the term. *See United States v. Lehman*, 225 F.3d 426, 428–429 (4th Cir.2000) ("A fundamental canon of statutory construction requires that 'unless otherwise defined, words will be interpreted as taking their ordinary,

contemporary, common meaning.' ") (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46:01 (7th ed. 2009). Black's Law Dictionary defines "consideration" as "[s]omething of value (such as an act, a forbearance, or a return promise) received by a promisor from a promisee." *Black's Law Dictionary* 300 (7th ed. 1999). The Court further notes that Black's Law Dictionary, consistent with federal case law cited later in this opinion, also makes clear that "past consideration," which is defined as "an act done or a promise given by a promisee before making a promise sought to be enforced," is not valid consideration. *Black's Law Dictionary* 302 (7th ed. 1999) (defining "past consideration").

■ In the instant action, Register and Galvin entered into an agreement in March 2001 in which Galvin was required to pay approximately $1,000 per month to Register and provide food and other household products while she and her son lived at the Real Property. Despite Defendants' contentions to the contrary, there is no evidence to suggest that this agreement between Register and Galvin represented a bargain for or exchange of something of value in return for Galvin's interest in the Real Property. Instead, the undisputed facts demonstrate that Galvin's monthly $1,000 payments were mere payments in the nature of rent rather than any consideration for an interest in the Real Property. This conclusion is evidenced by, among other things, the fact that, although Defendants now assert that Galvin's $1,000 monthly payments starting in March 2001 constituted consideration, Register did not convey and Galvin did not obtain an interest in the Real Property until 2004. In fact, it was only in 2004, after Register's then-wife, Beth Register,

relinquished her ownership interest in the Real Property to Register following their divorce, that Register transferred the Real Property to himself and Galvin, his then-fiancee. Furthermore, there is similarly no evidence showing that, *at the time of the transfer,* Register and Galvin bargained for or exchanged anything of value in consideration for Register giving an interest in the Real Property to Galvin.

### c. no genuine issues of material fact in dispute

Defendants argue that the Court cannot grant summary judgment because the record reflects several genuine issues of material fact that are in dispute. In making this argument, Defendants point to the following facts, which are addressed in turn.

First, Defendants claim that the $1,000 monthly payments "[were] not rent," but rather "a contribution to the equity in the Real Property." (Decl. Galvin ¶ 3.) However, the undisputed facts, even when viewed in the light most favorable to the Defendants, belie this statement. Most significantly, neither party claims to have expressly discussed or memorialized that their 2001 agreement would be for an equity interest in the Real Property. Furthermore, at the time she began making the payments, Galvin could not have bargained for an interest in the Real Property because Register, owning the Real Property with his then-wife, had no authority to make such a bargain and has made no assertion that he had such authority. Moreover, even if, in 2004, Galvin's prior monthly payments were relied upon by Defendants as consideration supporting Register's decision to transfer to Galvin an interest in the Real Property, such payments could not be "adequate and fair consideration" because, as has been explained above, past consideration cannot

support a future bargain and thus cannot constitute "consideration." *See United States v. Sweeny,* 418 F.Supp.2d 492, 497–98 (S.D.N.Y.2006) ("Past consideration is insufficient to render [a party] a 'purchaser' under [26 U.S.C. 6323(a) ]."); *United States v. Phillips,* 715 F.Supp. 81, 84 (S.D.N.Y.1989) (citing *United States v. Pavenick,* 197 F.Supp. 257, 259 (D.N.J.1961) and *United States v. Franklin Fed. Sav. & Loan Ass'n,* 140 F.Supp. 286, 288 (M.D.Pa. 1956)). Lastly, counsel for Defendants asserts that Galvin and Register's agreement was in fact an option to purchase an interest in the Real Property at a later time. Simply put, neither Galvin nor Register describe their agreement as an option anywhere in the affidavits or exhibits submitted to the Court.

Second, Defendants curiously point, as support for their consideration argument, to Galvin's statement that she and Register arrived at the $1,000 per month figure because it was "approximately half of the mortgage payment." (Gov't Ex. 113, Galvin Dep. 16:2–3.) In doing so, however, Defendants ignore the preceding sentences, which cast the negotiation in a significantly different light. Looking to the deposition transcript, in response to an inquiry about how Register and Galvin agreed to payments of roughly $1,000 per month, Galvin stated that $1,000 represents what she "was paying when [she] was renting [her previous home]" and that Register had determined that if she could afford $1,000 per month at her previous home she could afford it when she moved to the Real Property. (Gov't Ex. 113, Galvin Dep. 15:19–3.) The fact that $1,000 also represented half the monthly mortgage payment thus appears to merely reflect an additional basis for why monthly payments of roughly $1,000 by Galvin to Register would be fair. Therefore, the payment's relation to Register's monthly mortgage does not demonstrate that there was an agreement between the Defendants that the monthly payments constituted consideration for an interest in the Real Property. Moreover, according to Galvin, the $1,000 monthly payments were to continue "[a]s long as [she] lived there...." (Gov't Ex. 113, Galvin Dep. 15:24–25.) This claim further indicates that Register and Galvin had not bargained for some permanent equity interest in the Real Property for Galvin, but rather simply negotiated a temporary rental agreement.

Third, Defendants' point to deposition statements by Galvin that purportedly show that Galvin contributed $1,000 per month towards equity in the Real Property because she wanted to make certain that if anything happened to Register she would have a place to live. Disturbingly, Galvin never made such a representation during her deposition. Rather, Galvin explained that the reason why Register *executed the deed of gift* (not why Defendants agreed to the $1,000 monthly payments) was because she wanted to make sure she had a place to live if anything happened to Register. (Gov't Ex. 113, Galvin Dep. 17:19–18–5.) Such a statement cannot show that Defendants intended the monthly payments to serve as consideration for Galvin's interest in the Real Property.

Fourth, in support of their argument that a genuine issue of material fact exists that makes summary judgment inappropriate, Defendants lastly point to a statement by Galvin during her deposition that purportedly shows that her payments to Register were not just for the rooms she and her son occupied, but rather "for the whole house." Again, the deposition transcript belies the argument. Galvin initially explained that the agreement between she and Register required her to "pay $1,000 per month and then the normal household expense for food, household products." (Gov't Ex. 113, Galvin Dep. 15:15–16.)

Then, when next asked whether that "would [ ] be for you and your son only," Galvin responded: "No. For the whole house." (Gov't Ex. 113, Galvin Dep. 15:17–18.) Galvin's statement cannot reasonably be interpreted as a comment regarding her access to rooms in the Real Property other than the rooms she and her son occupied, thereby attempting to show that Galvin was purchasing an equity interest in the Real Property. Although it may be true that Galvin and her son had access to the whole house, it is clear that Galvin was commenting on the fact that the "normal household expenses," such as "food" and other "household products," for which she was responsible, were to be used by both Register, her, and her son. Moreover, even if Galvin's statement could somehow be construed as referring to her and her son's access to all the rooms in the house located at the Real Property, such a fact would not demonstrate that Register and Galvin's agreement was in consideration for an interest in the home because even renters have access to common areas of a property rather than merely the rooms they occupy.

The dearth of evidence as to whether Galvin provided "adequate and full consideration" in exchange for an interest in the Real Property is particularly fatal because Defendants have the burden of proof in establishing Galvin's "purchaser" status. Even when viewing the undisputed facts concerning Galvin's monthly payments in the light most favorable to the Defendants, a reasonable jury could not conclude that the Defendants could carry their burden and prove that Galvin and Register bargained for or exchanged adequate and full consideration for Galvin's interest in the Real Property. Accordingly, there is no genuine issue of material fact with respect to the validity of the federal tax liens attached to the Real Property.

For the reasons outlined above, the Court finds that the federal tax liens resulting from Register's unpaid tax liabilities, and attached to the Real Property, are valid.

### ii. propriety of foreclosure

The Government is permitted to enforce a valid federal tax lien following a defendant's "refusal and neglect to pay" the tax by "subject[ing] any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax liability." 26 U.S.C. § 7403. Because Defendant Register has failed to pay his outstanding tax liabilities, the Government further requests an order for the sale of the Real Property, the proceeds of which would be used to satisfy Register's unpaid tax debt. To stave off foreclosure, Defendants assert that sale of the Real Property "would unjustly deprive Galvin of her property and home where she has lived for the past nine years."

 Federal tax liens "cannot extend beyond the property interest held by the delinquent taxpayer" and the Government can collect no more in satisfaction of the indebtedness "than the value of the property interests that are actually liable for that debt." *United States v. Rodgers*, 461 U.S. 677, 690–91, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). However, the Supreme Court has held that § 7403's subjection of a delinquent taxpayer's property to seizure in payment of a debt also authorizes the sale of the entirety of the property, not just the delinquent taxpayers' interest, even if, for example, a non-delinquent spouse also maintains an interest in the property. *Id.* at 691–96., 103 S.Ct. 2132 Nevertheless, "some limited room is left in the statute for the exercise of reasoned discretion," *id.* at 706, 103 S.Ct. 2132, though this "limited discretion ... should be exercised rigorously and sparingly, keeping in mind the Government's para-

mount interest in prompt and certain collection of delinquent taxes." *Id.* at 711, 103 S.Ct. 2132.

In *Rodgers*, the Supreme Court utilized the following non-exhaustive list of four factors that may be examined in deciding whether foreclosure would be inequitable: (1) "the extent to which the Government's financial interest would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes"; (2) "whether the third party with a non-liable separate interest in the property would ... have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors"; (3) "the likely prejudice to the third party, both in personal dislocation costs and ... practical undercompensation"; and (4) "the relative character and value of the non-liable and liable interest held in the property." *Id.* at 710–11, 103 S.Ct. 2132.

In the instant action, the Court finds that, based on the undisputed evidence, the weight of the factors militates toward granting summary judgment and ordering foreclosure of the Real Property. First, prohibiting the sale would deprive the Government of any real opportunity to satisfy Register's long-standing debt, which would significantly prejudice the Government's financial interests. Furthermore, forced sale of only Register's interest in the Real Property would be impractical. second, as has been discussed above, because Galvin did not provide adequate and full consideration for her interest in the Real Property, she does not have a legally recognized expectation, as a purchaser, that the property would not be subject to forced sale. Furthermore, unlike in *Rodgers*, Defendants have failed to point to any provision of local law that would bestow such an expectation on Gal-

vin. Third, although Galvin will surely face some hardship as a result of a foreclosure, such hardship is not outweighed by the Government's paramount interest in collecting taxes, particularly in light of Register's persistent failure to concede to collection. Following the payment of all outstanding liabilities, Galvin will receive a portion of any remaining funds as a holder of interest in the Real Property. while such funds may not equal the $40,000 paid by Galvin to Register between the time she moved to the Real Property and the transfer of the interest to her, as the Court has already explained, the evidence demonstrates that such payments constituted payments in the nature of rent rather than payments for an equity interest in the Real Property. Fourth and finally, there has been no suggestion that Galvin's non-liable interest is disproportionate to Register's liable interest in the Real Property. Rather, each of the Defendants maintains an equal interest in the Real Property.

Accordingly, Defendants have failed to provide any evidence to support their contention that foreclosure would be inequitable. Therefore, because the undisputed facts indicate that Register has failed or neglected to pay his outstanding tax liabilities, the Government is entitled to an order of foreclosure forcing the sale of the Real Property.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Government's Motion for Summary Judgment.

The Court **FINDS** that the Government is entitled to a judgment in its favor and against Defendant Dennis R. Register for unpaid tax assessments, penalties, and statutory interest in the amount of $179,727.84.

The court also **FINDS** that the Government is entitled to foreclose the Real Property of the Defendants, Dennis R. Register and cola Galvin–Register. The Court therefore **ORDERS** the sale of the Real Property described in the Complaint, with the proceeds from the sale to be used to pay Defendant Register's outstanding tax liabilities in accordance with an Order of Distribution, which subsequently will be entered by the Court, establishing the priority in which proceeds from the sale will be distributed to the parties.

The Court further **ORDERS** all parties to consult and, consistent with this ruling, agree to a proposed Order of Distribution establishing the priority in which the funds will be distributed among the parties. While noting Defendants Register and Galvin's objection to the ruling contained in this Opinion and Order, the Court **REQUIRES** Defendants Galvin and Register to participate in the drafting of the Order of Distribution though they may of course note their objections on such order.

**IT IS SO ORDERED.**