Carl Junior HIGGINBOTHAM, Appellee,

v.

UNITED STATES of America, Appellant.

No. 75–1487.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1977.

Decided June 22, 1977.

Murray S. Horwitz, Atty., Tax Div., Dept. of Justice, Washington, D. C. (John A. Field, III, U. S. Atty., Charleston, W. Va., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Michael L. Paup, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellant.

Franklin S. Fragale, Jr., Charleston, W. Va. (Stanley E. Preiser, Preiser & Carrico, Charleston, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WYZANSKI,* Senior District Judge.

* For the District of Massachusetts, Sitting by Designation.

1. Normally, the full payment of an assessment is required as a prerequisite of a refund suit. *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), aff'd on reargument, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). But, the full payment rule does not apply to a suit for the refund of excise taxes

**HAYNSWORTH, Chief Judge:**

The government appeals the verdict below because it is not satisfied with the amount the jury awarded on its counterclaim against the taxpayer. It argues that the trial court erroneously placed the burden of proof regarding the counterclaim on the government and erred in telling the jury not to consider certain factors in determining the amount of taxes due. We find no prejudicial error in the trial court's instructions.

The only real issue at trial involved the amount of taxes due the government. After raiding the taxpayer's gambling operation, the IRS determined that he owed $353,082.06 in wagering excise taxes and assessed that amount against him. The taxpayer paid $293.50 on the assessment and then sued for a refund.[1] The government counterclaimed for the unpaid balance. At the trial the taxpayer conceded that he had been in the business of accepting wagers, that he was not entitled to a refund, and that he owed the government more money.

Both parties introduced their own computation of the amount owed. The court properly told the jury that the only question was how much the taxpayer owed, but its initial instructions regarding the burden of proof on the government's counterclaim failed to satisfy either party. After hearing the objections to its instructions, the court called the jury back and gave the following instruction:

In a case, in any case, the side asserting a claim to begin with has the burden of proof of his case, to prove his case by a preponderance of the evidence. In this case we are concerned mostly with the counterclaim of the Government, and on that counterclaim to begin with the Government has the burden of proof. All right. The law says that when there are

that are divisible into a tax on each transaction or event. *See, Compton v. United States*, 334 F.2d 212 (4th Cir. 1964). The theory of divisible assessments applies to excise taxes on wagers and in such case the taxpayer may pay the taxes attributable to one or more wagers, and then, after denial of his refund claim, file a suit for refund.

no records kept and the Government uses the projection methods then there is a presumption then that the figures are right and the burden of going forward with the evidence shifts. The burden of proof still remains with the Government but the burden of going forward with the evidence, which is not exactly the same thing as the burden of proof, it then puts it up to the plaintiff in this case to come forth with competent and relevant evidence to show that that was wrong. But the burden of proof itself never does shift from the Government. They just get the advantage of that presumption. Then when they go forward with relevant and competent evidence that takes away that presumption and then we are back to where we started from.

The Government objected to the new instruction contending that the taxpayer should bear the same burden of proof on the counterclaim as on the refund claim. The jury returned a verdict for the Government of $48,388.92.

■■■ The Government says that the court should have told the jury that the taxpayer must prove that the Government's assessment was wrong and must show the amount that he actually owed. Although such an instruction is proper in a refund suit where the plaintiff must show what he actually owes in order to prove that he deserves a refund, *Compton v. United States,* 334 F.2d 212, 216 (4th Cir. 1964), it is not appropriate regarding a Government counterclaim to collect taxes which have been assessed but not paid. We agree with the Second Circuit that in response to a counterclaim, a taxpayer need only prove by a preponderance of the evidence that the Government's assessment is erroneous, and, once that burden is met, the Government, not the taxpayer, must prove how much the taxpayer actually owes.[2] *Lesser v. United States,* 368 F.2d 306, 310 (2d Cir. 1968); *United States v. Lease,* 346 F.2d 696, 701 (2d Cir. 1965). *But see, DeLorenzo v. Unit-*

ed *States,* 555 F.2d 27 (2d Cir. 1977). The Government bears the same burden of proof on a counterclaim to collect taxes as it does when it initiates a collection suit.

■■■ It is well established that, in a deficiency suit by the Government to collect taxes, a taxpayer need not show how much he actually owes once he has shown the Government's claim to be erroneous. *Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935). The taxpayer must show what he actually owes in a refund suit because the ultimate question in such a suit is not whether the assessment was wrong but whether the amount paid exceeded the amount due. *Compton v. United States, supra* at 216. In a collection suit or a counterclaim in a refund suit, the issue is whether the Government is entitled to what it has assessed. The presumption of administrative regularity, the need to encourage taxpayers to keep records, and the governmental interest in facilitating the collection of taxes justify requiring the taxpayer to pay what the Government asks unless he can prove that the Government's assessment is excessive. Once the taxpayer has proved that the Government's assessment is excessive, there is no sufficient justification for relieving the Government of the burden of showing what the taxpayer owes.

The cases upon which the Government relies are not inconsistent with our holding. *G. M. Leasing Corp. v. United States,* 514 F.2d 935 (10th Cir. 1975) held that the plaintiffs had not shown the Government's assessment to be erroneous and, thus, the Government could rely on the assessment to sustain its case. *Psaty v. United States,* 442 F.2d 1154, 1160 (3d Cir. 1971); *Liddon v. United States,* 448 F.2d 509, 514 (5th Cir. 1971) and *United States v. Rexach,* 482 F.2d 10, 15–17 (1st Cir. 1973) indicate that the taxpayer has more than a procedural burden of going forward in response to a counterclaim in a refund suit and must actually prove the assessment wrong. Although

---

2. The Fifth Circuit has also adopted this rule. *See Bar L Ranch, Inc. v. Phinney,* 426 F.2d 995, 998–99 (5th Cir. 1970).

*Liddon* contains language saying that there is no difference in the taxpayer's burden on a refund claim and a counterclaim in the same suit, in view of *Bar L Ranch, supra*, n. 2 that language most likely means that there is no difference only as far as the taxpayer's burden to show that the IRS assessment is erroneous.

Nor is our position here inconsistent with our prior decision in *Foster v. Commissioner of Internal Revenue*, 391 F.2d 727, 735 (4th Cir. 1968) where we said that the presumption that a deficiency determination is correct imposes a procedural burden on the taxpayer to produce evidence "from which it [can] be found that he did not receive the income alleged in the deficiency notice" and that once the taxpayer meets his procedural burden the Government must prove "the existence and amount of the deficiency." As noted in *United States v. Rexach, supra*, n. 3 there has been some confusion regarding the proper interpretation of *Foster's* language regarding the burden of proof. If interpreted to mean that the presumption of accuracy only requires that the taxpayer produce evidence from which the Government's determination can be found erroneous, *Foster* would not alter the result here but it would be inconsistent with the rule adopted in *Lesser, supra*, and *Lease, supra*. We do not read *Foster* so broadly.

■ As suggested in *Rexach, supra*, the discussion of burden of proof in *Foster* applies only to the procedural effects of the presumption that an assessment is accurate. Once a taxpayer has introduced evidence sufficient to support a finding that the as-

sessment is wrong, *Foster* prevents the Government from simply resting on the presumption and requires it to come forward with some evidence sufficient to support a conclusion that the assessment is correct in spite of the taxpayer's evidence. But the taxpayer continues to bear the risk of nonpersuasion. *Foster* does not relieve the taxpayer of the burden of proving the Government's assessment wrong by a preponderance of the evidence.[3]

■ Although the instruction in this case may not have been a precise statement of the law regarding the Government's burden of proof on the counterclaim, we do not think there was reversible error. The court told the jury that the Government's assessment was presumed correct and that the plaintiff had to "come forth with competent and relevant evidence to show that" the assessment was wrong. We think the instruction requiring the plaintiff "to show that [the assessment] was wrong" effectively placed the burden of proof on the taxpayer and was not so prejudicial to the Government as to require a new trial here.

■ The Government also objects to the portions of the charge telling the jury not to consider money from "tips" and "layoffs" in calculating the gross wagers accepted by the taxpayer. There is no merit to this objection. The Government itself excluded "tips" and "lay-offs" in its computation of the gross amount of wagers accepted. The court's instructions did not prevent the jury from noting that the Government's exclusion of "tips" and "lay-

**3.** *Foster* relied upon our decision in *Stout v. Commissioner of Internal Revenue*, 273 F.2d 345, 350 (1959) where we said:

> The presumption of correctness is procedural. It transfers to the taxpayer the burden of going forward with evidence, but it disappears in a proceeding to review the assessment when substantial evidence contrary to the Commissioner's finding is introduced. Thereafter, the Tax Court, in such a proceeding, must make its own findings based upon the evidence before it, and we may affirm only if the findings of the Tax Court are supported by substantial evidence in the record of that proceeding.

Although *Stout* says the presumption is procedural, it does not say that it is solely procedural. *Stout's* reference to the disappearance of the presumption merely means that once the taxpayer has met his procedural burden of going forward, the Government is no longer entitled to a directed verdict on the basis of the presumption alone. Thereafter the factfinder must evaluate the evidence before it and determine whether the assessment is indeed correct. But, like *Foster, Stout* does not relieve the taxpayer of the risk of nonpersuasion regarding his claim that the assessment is wrong nor does it permit the taxpayer to shift the ultimate burden of proof regarding the accuracy of the assessment to the Government.

offs" tended to show that the Government had attempted to be reasonable in making its assessment.

AFFIRMED.