T.C. Summary Opinion 2004-31

UNITED STATES TAX COURT

HARRY ALLEN AND EVELYN SCOTT HALL, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13109-02S.          Filed March 16, 2004.

Harry Allen Hall, pro se.

<u>T. Keith Fogg,</u> for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not

---

     [1]     Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
year at issue.  Rule references are to the Tax Court Rules of
Practice and Procedure.

be cited as authority.

Respondent determined a deficiency of $13,267 in petitioners' Federal income tax and an accuracy-related penalty under section 6662(a) of $2,653, for the year 2000. After concessions, the sole issue for decision is whether petitioners had unreported gross income of $51,470 from a trade or business activity in 2000.[2]

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and are made part hereof. Petitioners' legal residence at the time the petition was filed was Virginia Beach, Virginia.

Petitioners were married during the year at issue and filed a timely joint income tax return. Harry Hall was a truck driver. He conducted this occupation as a Schedule C, Profit or Loss From Business, trade or business activity. Evelyn Hall worked in maintenance and reported $15,968 in wage and salary income.

Mr. Hall operated a tractor-trailer. He owned the tractor and leased the trailer from American Road Lines (ARL), a private corporation with whom he had a contractual relationship during the year at issue. ARL had contracts with the Federal

---

[2] Petitioners conceded the sec. 72(t) tax due on an early withdrawal from an Individual Retirement Account (IRA). Respondent conceded the accuracy-related penalty and $10,983 in additional allowable Schedule C expenses. Other adjustments are computational in nature.

Government.  Under an agreement with ARL, Mr. Hall transported Government freight across the United States as an independent owner/operator.

ARL sent Mr. Hall weekly settlement statements.  Each statement consisted of a "permanent check voucher" and a "settlement voucher," which listed the income Mr. Hall had earned on his trips for ARL, as well as any deductible charges he had incurred during that week.  The charges included rent due on the trailer and other expenses advanced by ARL, such as truck tags needed to cross into various States, taxes, and expenses with respect to use of the leased trailer.  Mr. Hall was obligated to repay such expenses.  Each item of income and expense was enumerated.  In the audit of their return by respondent, petitioners provided roughly two-thirds of the weekly statements for the year at issue.  These statements were produced at trial. Other statements were either misplaced or lost.

On the lower portion of each weekly settlement statement were figures entitled, "YTD Amount" and "YTD 1099".  These figures suggested a running total, as they tended to increase with each later statement.  However, some statements contained the designation, "N/A," in the "YTD Amount" or "YTD 1099" column. The last statement for the year, dated December 21, 2000, showed a "YTD Amount" of $54,197.69 and a "YTD 1099" of $43,983.72.

During the course of the year, Mr. Hall noticed that his

statements had inaccuracies. Specifically, he did not understand the instances when "N/A" appeared in the "YTD Amount" or "YTD 1099" column. Both he and Mrs. Hall attempted to contact ARL on several occasions for explanations; however, they were unsuccessful. Mr. Hall described these efforts to the Court:

> During the course of the year, I had the pleasure to call ARL constantly and question them about the figures on the bottom of the settlement. The woman said okay, we'll try to get it straight. We'll straighten it out.
>
> *       *       *       *       *       *       *
>
> I couldn't make heads or tails just looking at their paperwork that they * * * [were] giving me a true figure because I had inquired to these people over and over that my statements didn't look right. The figures wouldn't match.
>
> I was asking them for help to figure out their own paperwork, and the woman there told me that she would try to figure it out. Don't worry about it. It will be corrected. Just keep on trucking. I was being honest with them, and I was hoping that they were being honest with me.
>
> *       *       *       *       *       *       *
>
> When the figures did show up, I thought it was corrected. I took it at face value that the figures were correct.

Petitioners eventually lost faith in ARL. Mr. Hall left the company in December 2000 to pursue more local trucking work with a different company.

Petitioners filed their 2000 Federal income tax return timely. On Schedule C, they reported $47,773 in gross receipts or sales from Mr. Hall's activity as a truck driver. This amount

represented the $43,983.72 in the "YTD 1099" column on the December 21, 2000, settlement statement from ARL, plus payments received from two other companies, Gilco Properties and RB&B Trucking.

On Form 1099-MISC, Miscellaneous Income, ARL reported the amount it had paid to Mr. Hall in 2000 to the Internal Revenue Service. The parties stipulated that the information return issued by ARL reflected that ARL paid $95,455 to Mr. Hall during the year in question.[3] Petitioners did not receive the Form 1099-MISC from ARL. The Form 1099-MISC was not produced at trial, but respondent's explanation of adjustments refers to it, indicating that a Form 1099 was received by respondent.

The issue for decision is whether, on their 2000 income tax return, petitioners underreported gross trade or business income of $51,470, the difference between the $95,455 on the Form 1099 filed by ARL and the $43,983.72 stated on the settlement statement issued to Mr. Hall by ARL. Generally, the taxpayer has the burden of proving that the determinations made by Commissioner in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). However, section 6201(d) provides that, if the taxpayer, in a court

---

[3] In later correspondence with respondent, ARL indicated that the Form 1099 had understated the amount paid to Mr. Hall by $1,349. However, respondent has not sought an increased deficiency.

proceeding, asserts a reasonable dispute with respect to income reported on an information return and fully cooperates with the Commissioner, the Commissioner has the burden of producing reasonable and probative information in addition to the information return. Hardy v. Commissioner, T.C. Memo. 1997-97, affd. 181 F.3d 1002 (9th Cir. 1999). The Court is satisfied that the requirements of section 6201(d) have been met, and the burden of going forward is on respondent with respect to this additional income.

The Court concludes that respondent has met the burden of producing reasonable and probative information with respect to the deficiency. In the audit of petitioners' return, respondent's revenue agent, Elizabeth Isgett, obtained from ARL a summary of the checks issued to Mr. Hall in 2000 (check summary). The check summary was a complete record of ARL's payments and deductions with respect to Mr. Hall for the year at issue. It contained a column labeled "1099 Amount". Ms. Isgett determined that the income and expense items on the check summary, when combined, produced the net figure of $95,455 reported to the Internal Revenue Service by ARL.[4] This information was

---

[4] Ms. Isgett compared the check summary with the available weekly settlement statements and determined that the "1099 YTD" total on the Dec. 21 settlement statement ($43,984.72) did not represent the net effect of Mr. Hall's income and expenses as reflected in his check summaries. In fact, this "1099 YTD" total did not correspond to any of the records she

(continued...)

reasonable, probative, and supportive of the allegation of additional income.  Respondent satisfies the requirements of section 6201(d).

Although respondent bore the burden of proof with respect to the issue of unreported income, nonetheless, the ultimate burden of persuasion, or risk of nonpersuasion, remains on petitioners. Senter v. Commissioner, T.C. Memo. 1995-311 (citing Higginbotham v. United States, 556 F.2d 1173, 1176 (4th Cir. 1977)).[5]  For the following reasons, the Court holds that petitioners have not met their ultimate burden of persuasion that they did not receive the $51,470 in gross income at issue.

Gross income includes all income from whatever source derived.  Sec. 61(a).  Despite the error in the running totals columns, the available weekly statements do corroborate the income and expense entries contained on the check summary.  The Court thus concludes that the check summary is reliable evidence of ARL's payments and deductions with respect to Mr. Hall.

---

[4](...continued)
reviewed.  As the Court was also not able to determine the origin of that figure, the Court disregards the significance of the "1099 YTD" amount as reflected on the Dec. 21 settlement statement.

[5]     Because any appeal in this case, if it were permissible, would lie to the Court of Appeals for the Fourth Circuit, the Court follows the precedent established in that Circuit.  Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Moreover, the check summary covers the entire taxable year and supports respondent's contention that petitioners had income that was not reported on their return. Petitioners have not contested the accuracy of the check summary.

Section 6001 provides generally that every person liable for any tax shall keep such records, render such statements, make such returns, and otherwise comply with applicable rules and regulations for the reporting of income and expenses. To be sure, some of the monthly statements petitioners received from ARL contained inaccuracies; however, petitioners knew that. Petitioners failed to maintain their own books and records to persuade the Court that the information return filed at yearend with respondent by ARL was inaccurate. On this record, the Court finds that petitioners did receive $51,470 in unreported income during the year 2000. Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.