T.C. Summary Opinion 2021-4

UNITED STATES TAX COURT

TERRY T. BROWN, SR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5687-16S.                         Filed January 26, 2021.

Terry T. Brown, Sr., pro se.

<u>Christopher Valvardi</u>, for respondent.

SUMMARY OPINION[1]

GREAVES, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect when the petition was filed.[2]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Respondent determined deficiencies in, and section 6662(a) accuracy-related penalties with respect to, petitioner's Federal income tax for 2012 and 2013 (years at issue) as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2012 | $26,561 | $5,312 |
| 2013 | 23,610 | 4,722 |

---

[1]This case was tried before Judge Robert P. Ruwe on December 2, 2019. The Court issued an order proposing to reassign this case to another judicial officer for purposes of preparing the opinion and entering the decision based on the record of trial, or, alternatively, allowing the parties to request a new trial.  The parties consented to reassignment of the case.  By order dated August 19, 2020, this case was submitted to Judge Travis A. Greaves.

[2]Unless otherwise noted, all section references are to the Code in effect at all relevant times, all Rule references are to the Tax Court Rules of Practice and Procedure, and all dollar amounts are rounded to the nearest dollar.

After respondent's concessions, the issues for decision are whether petitioner: (1) is entitled to deduct certain items on Schedule A, Itemized Deductions, and Schedule C, Profit or Loss From Business, and to deduct certain losses on Schedules E, Supplemental Income and Loss; (2) received unreported taxable income; and (3) is liable for section 6662(a) accuracy-related penalties. We decide all issues in respondent's favor.

## Background

The parties filed a stipulation of facts with accompanying exhibits that is incorporated by this reference. Petitioner resided in Maryland when he petitioned this Court.

### Employment at Baltimore Behavioral Health, Inc.

Petitioner was a full-time employee of Baltimore Behavioral Health, Inc., and its successor JR Healthcare Associates, LLC, d.b.a. Baltimore Behavioral Health (collectively, BBH) during the years at issue. Petitioner worked in various roles at BBH, including interim chief executive officer, before BBH terminated him in February 2014. During his tenure at BBH, petitioner rarely worked less than 60 hours per week and never held an ownership interest in BBH.

Real estate interests

In addition to his work at BBH, petitioner held an active realtor's license and taught real estate-related courses as an adjunct professor at a local university during the years at issue. Petitioner also owned a property in Baltimore, Maryland, which was his principal residence during the years at issue (Maryland property), a property in Millsboro, Delaware (Delaware property), and a timeshare in Palm Beach, Aruba (Aruba timeshare).

Individual retirement account distribution

Lincoln National Life Insurance Co. (LNLI) issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that listed an individual retirement account (IRA) distribution of $4,471 in 2012.

Petitioner's tax returns

Petitioner reported several expenses, including travel and entertainment, on a Schedule C attached to the Form 1040, U.S. Individual Income Tax Return, for each year at issue. Petitioner also reported $9,657 for medical and dental expenses in 2012 and charitable contributions in 2013 comprising $32,743 in cash gifts and $15,409 in gifts other than cash.

Petitioner listed the Maryland property, the Delaware property, and the Aruba timeshare as rental properties on a Schedule E for each year at issue (with the exception of the Aruba timeshare in 2013, which petitioner sold in 2012). With respect to those properties, petitioner reported rental real estate income of zero for 2012 and $1,100 for 2013, and rental real estate losses $31,194 for 2012 and $8,419 for 2013. Petitioner reported those items of income and loss on Schedules E for the respective 2012 and 2013 years. Petitioner did not report the LNLI distribution on his 2012 Form 1040.

Exam of petitioner's tax returns and notice of deficiency

At some point during or after 2014 respondent audited petitioner's returns for the years at issue. When asked to provide records necessary to substantiate the expenses and losses reported on his Schedules A, C, and E, petitioner claimed that he maintained the supporting documentation exclusively on his BBH work computer, which he no longer had access to following his termination from BBH. Petitioner claimed that he made several attempts to retrieve the files but that BBH informed him that they had been destroyed. With respect to the reported charitable contribution items, petitioner obtained a letter from a former BBH board member dated November 11, 2014, which stated that petitioner paid out-of-pocket expenses on BBH's behalf for which he was never reimbursed and that those

unreimbursed expenses should be considered contributions to a nonprofit. The

letter did not contain any other identifying information such as amount, date,

location, or description of the property that petitioner allegedly donated.

Following the examination respondent determined that petitioner had failed

to substantiate many of the expenses and losses reported on the Schedules A, C,

and E for the years at issue.[3] Respondent also determined that petitioner had

received additional income from the LNLI distribution for 2012 that he failed to

report. Thereafter, respondent issued a notice of deficiency on January 21, 2016,

increasing petitioner's taxable income by the amount of the LNLI distribution and

disallowing the following aggregate amounts that he deducted on his returns:[4]

---

[3]Respondent also concluded that many of the reported Schedule C expenses, even if properly documented, were incorrectly reported on Schedule C. Respondent contended that those expenses, even if allowed, should have instead been itemized and limited to the amount exceeding 2% of petitioner's adjusted gross income (AGI) on his Schedules A for the years at issue.

[4]Respondent conceded the following adjustments originally determined in the notice of deficiency: (1) an unreimbursed business expense deduction for the 2013 taxable year of $500 for the purchase of a Dodge van; (2) $14,208 in adjustments for the 2013 taxable year which were the result of disallowed business expense deductions claimed on petitioner's Schedule C; and (3) a $9,000 adjustment made with regard to petitioner's capital gains for the 2012 taxable year.

|                                  | 2012     | 2013     |
|----------------------------------|----------|----------|
| Schedule A itemized deductions   | $5,038   | $48,152  |
| Schedule C business expenses     | 75,556   | 14,208   |
| Schedule E rental real estate losses | 31,194 | 8,419   |

Respondent also determined section 6662(a) accuracy-related penalties for both years after completing Examination Workpaper number 300, Civil Penalty Approval Form, signed by Internal Revenue Service (IRS) Group Manager A. Bratcher on December 22, 2014. Thereafter, petitioner petitioned this Court for redetermination of the deficiencies and penalties.

## Discussion

### I. Burden of Proof

The Commissioner's determinations set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). An exception may apply where the Commissioner alleges unreported income but introduces no substantive evidence and relies solely on the presumption of correctness. See, e.g., Cebollero v. Commissioner, 967 F.2d 986, 990 (4th Cir. 1992), aff'g T.C. Memo. 1990-618; Jackson v. Commissioner, 73 T.C. 394, 401 (1979).

II. Schedule C Expenses

Petitioner contends that the disallowed amounts on the Schedules C reflect costs he personally incurred in connection with his employment at BBH, including out-of-pocket expenses. A taxpayer may generally deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Sec. 162(a). Generally the performance of services as an employee constitutes a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988); Primuth v. Commissioner, 54 T.C. 374, 377 (1970). If as a condition of employment an employee is required to incur certain expenses, the employee may deduct those expenses to the extent the expenses are not subject to reimbursement. See Fountain v. Commissioner, 59 T.C. 696, 708 (1973); Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). A taxpayer cannot deduct employee business expenses to the extent he is entitled to reimbursement from his employer for those expenses. See Lucas v. Commissioner, 79 T.C. 1, 7 (1982).

Deductions are also a matter of legislative grace; the taxpayer bears the burden of substantiating his claimed deductions by keeping and producing records sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs. The failure to keep and present accurate records "counts

heavily against a taxpayer's attempted proof." Rogers v. Commissioner, T.C. Memo. 2014-141, at *17. Moreover certain expenses, including those for travel and entertainment, carry a heightened substantiation requirement. Through adequate records or other sufficient evidence, a taxpayer must establish the following elements: (1) the amount of the expense; (2) the time and place of the travel or entertainment; (3) the business purpose of the expense; and (4) for entertainment expenses, the business relationship to the taxpayer of persons entertained. Sec. 274(d); sec. 1.274-5T(b)(3) and (4), Temporary Income Tax Regs., 50 Fed. Reg. 46015-46016 (Nov. 6, 1985).

If a taxpayer's records are lost or destroyed through circumstances beyond his or her control, the taxpayer may substantiate expenses, including section 274(d) expenses, through reasonable reconstruction. See Boyd v. Commissioner, 122 T.C. 305, 320 (2004); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985). While "the inability to produce a record which is unintentionally lost, whether by * * * [the taxpayer] or by a third party, alters the type of evidence which may be offered to establish a fact," it does not affect the burden of proving a fact. Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); see also Rule 143. Crucial to this reconstruction is that the secondary evidence be credible. See, e.g., Boyd v. Commissioner, 122 T.C. at 320. If no

other documentation is available, the Court may, but is not required to, accept credible testimony of a taxpayer to substantiate an expense.  Id.

Petitioner offered little to no evidence to establish that he incurred any of the disallowed Schedule C expenses, let alone provide a rational basis from which to make a credible estimate as to such claimed expenses not otherwise subject to section 274(d).  Cf. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (explaining that where a taxpayer credibly establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction, the Court may estimate the allowable amount in certain circumstances); Boyd v. Commissioner, 122 T.C. at 320 (explaining that Cohan rule is inapplicable to section 274(d) expenses).  Petitioner submitted hundreds of documents; however, that evidence was either irrelevant or lacked a basic connection to the amounts reported on either return.  Moreover, we cannot accurately determine or estimate which claimed out-of-pocket costs may have ultimately been reimbursed or considered ordinary and necessary within the meaning of section 162(a). Petitioner did not provide any other evidence such as bank statements, canceled checks, credit card statements, or other written records and testimony that might have credibly corroborated a specific amount (or estimate thereof) to one that he claims to have incurred but that was not reimbursed.  Petitioner's testimony at trial

similarly lacked any clarifying details connecting the expenses referenced in the record to either return.  For these reasons we sustain respondent's adjustments with respect to Schedules C for both years except to the extent he has conceded the amounts.

III.  Schedule A Deductions

A.  Medical and Dental Expenses

Petitioner claimed deductions for medical and dental expenses of $9,657 for 2012.  Section 213(a) allows as a deduction "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent", to the extent such expenses exceeded 7.5% of AGI.[5]  Petitioner deducted medical and dental expenses based on the AGI he reported on his 2012 Form 1040; however, respondent's adjustments in the notice of deficiency increased petitioner's AGI.  Petitioner disputes the adjustments that caused his AGI to increase but does not challenge the limits on medical and dental expense deductions.  Accordingly, we uphold respondent's disallowance of

---

[5]The AGI floor was raised to 10% for taxable years beginning after December 31, 2012.  See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 9013(a), 124 Stat. at 868 (2010).

petitioner's medical and dental expenses on the basis that he may only deduct an amount to the extent it exceeds 7.5% of his AGI.[6]

B.  Charitable Contributions

Petitioner claimed charitable contribution deductions for 2013 of $32,743 for cash gifts and $15,409 for gifts other than cash.  Section 170 allows as a deduction any contribution made within the taxable year to a charitable organization.  Sec. 170(a)(1), (c).  Such deductions are allowable only if the taxpayer satisfies statutory and regulatory substantiation requirements.  See sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs.  The nature of the required substantiation depends on the size of the contribution and on whether it is a gift of cash or property.  See sec. 1.170A-13, Income Tax Regs.

For contributions of any kind, the taxpayer must maintain reliable records indicating (among other things) the donee organization and the value and date of the contribution.  See sec. 1.170A-13(a) and (b), Income Tax Regs.  For all contributions of property, the taxpayer must maintain reliable written records that

---

[6]Although respondent also argued in part that petitioner failed to substantiate the reported medical and dental expenses, respondent nevertheless allowed deductions for those expenses to the extent that they exceeded 7.5% of petitioner's AGI after adjustments.  Such inconsistent treatment in the pleadings and ultimate allowance led us to conclude that respondent conceded his substantiation argument with respect to the medical and dental expenses.

include the name of the donee, the date and location of the contribution, and a description of the property "in detail reasonable under the circumstances". Sec. 1.170A-13(b)(2)(ii)(A)-(C), Income Tax Regs. The taxpayer must also maintain records to establish "[t]he fair market value of the property at the time the contribution was made" and "the method utilized in determining the fair market value". Id. subdiv. (ii)(D). For all contributions valued at $250 or more, the taxpayer must obtain a "contemporaneous written acknowledgment" (CWA) from the donee. Sec. 170(f)(8). The CWA must include (among other things) a description of any property other than cash contributed. Id. subpara. (B)(i). In the absence of a CWA meeting the statute's requirements, "[n]o deduction shall be allowed". Id. subpara. (A).

In support of his position, petitioner submitted a letter from a former BBH board member. The letter stated that petitioner paid out-of-pocket expenses on BBH's behalf for which he was never reimbursed and that those unreimbursed expenses should be considered contributions to a nonprofit. The letter is dated November 11, 2014--nearly a year after the close of the 2013 tax year--and does not provide an amount, date, location, or description of any cash or property actually donated. Neither this letter nor any other evidence set forth in the record meets the requirements of the section 170 regulations. Accordingly, petitioner

failed to sufficiently show that he incurred such expenses and may not claim a deduction for the disallowed charitable contributions on his 2013 Form 1040.

IV.  Schedule E Rental Real Estate Losses

Sections 162 and 212 permit taxpayers to deduct certain business and investment expenses; however, if a taxpayer is an individual, section 469(a) disallows a "passive activity loss" for the taxable year.  Section 469(c) defines "passive activity" as any activity involving a trade or business in which the taxpayer does not "materially participate", including "any rental activity" regardless of whether the taxpayer materially participates.  Sec. 469(c)(1), (2), (4).  As relevant here, there are two exceptions to this disallowance rule:  for real estate professionals under section 469(c)(7) and for passive activity losses up to $25,000 under section 469(i).

Under the first exception, rental activities of certain taxpayers in real property trades or businesses (real estate professionals) are not considered per se passive activities if the taxpayer performs:  (i) more than one-half of all personal services for that year in real property trades or businesses in which the taxpayer materially participates and (ii) more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.  Sec. 469(c)(7)(A) and (B).  If the taxpayer satisfies these two

requirements, then the activities are treated as nonpassive activities, and the section 469(a) disallowance shall not apply to that portion of the claimed losses. See sec. 1.469-9(e)(1), Income Tax Regs.

A second exception to the passive activity loss disallowance rule allows taxpayers who "actively participate[]" in a rental activity to deduct up to $25,000 of passive activity losses annually. Sec. 469(i)(1) and (2). This exception begins to phase out when a taxpayer's AGI exceeds $100,000 and phases out entirely when AGI reaches $150,000. Sec. 469(i)(3). The active participation standard is met "as long as the taxpayer participates in a significant and bona fide sense in making management decisions or arranging for others to provide services such as repairs." Moss v. Commissioner, 135 T.C. 365, 371 (2010).

A taxpayer may establish his or her active participation in a rental real estate activity using "any reasonable means." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). More than a noncontemporaneous "ballpark guesstimate" is required, and we need not accept noncontemporaneous logs and self-serving testimony regarding hours worked when uncorroborated by underlying records. Moss v. Commissioner, 135 T.C. at 369; see also Hoskins v. Commissioner, T.C. Memo. 2013-36, at *14. Personal services performed as an

employee are not treated as performed in a real estate trade or business unless the employee is at least a 5% owner in the employer. Sec. 469(c)(7)(D)(ii).

Petitioner held an active realtor's license; however, he produced no documentation of time spent on any real estate activity or managing the properties listed on his Schedules E. Petitioner did not testify or establish through any evidentiary means that he performed at least 750 hours of services in real property trades or businesses during the years at issue. Rather, petitioner testified that he worked at least 40 hours, and rarely less than 60 hours, as a full-time employee of BBH. He claimed that he spent some time at BBH using his real estate abilities; however, any time petitioner spent as an employee of BBH cannot be treated as services performed in a real property trade or business as petitioner was not a 5% owner of BBH. Petitioner failed to establish that he spent sufficient time materially participating in real estate to qualify as a real estate professional for purposes of section 469(c)(7). Moreover, petitioner was ineligible for the exception under section 469(i) as his AGI for both years exceeded $150,000 after the adjustments in the notice of deficiency and respondent's concessions. Therefore we sustain the disallowance of all rental real estate losses petitioner reported on Schedules E for the years at issue.

V.  <u>Unreported Income</u>

Gross income includes all income from whatever source derived.  Sec. 61.

A distribution from an IRA is generally included as income to the distributee in

the year of the distribution.  Sec. 408(d)(1); <u>Schoof v. Commissioner</u>, 110 T.C. 1,

7 (1998); sec. 1.408-4(a)(1), Income Tax Regs.

Respondent produced a Form 1099-R issued by LNLI that reported an IRA

distribution of $4,471 to petitioner for 2012, thereby satisfying respondent's

burden of providing some reasonable foundation connecting petitioner with the

alleged income-producing activity.  Petitioner failed to produce any credible

evidence that this determination was made in error.  Therefore we sustain

respondent's determination that petitioner received a taxable distribution from his

LNLI account.

VI.  <u>Accuracy-Related Penalties</u>

Section 6662(a) and (b)(2) imposes a 20% penalty on an underpayment of

tax if it is attributable to a substantial understatement of income tax.  An

understatement of income tax is "substantial" if it exceeds the greater of $5,000 or

10% of the tax required to be shown on the return.  Sec. 6662(d)(1)(A).

Respondent bears the burden of production with respect to a section 6662 penalty.

<u>See</u> sec. 7491(c).  To meet this burden, respondent need only make a prima facie

case that imposition of the penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Respondent's burden of production under section 7491(c) also includes establishing compliance with section 6751(b)(1), which requires timely supervisory approval of penalties. See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Respondent's notice of deficiency, whose determinations we have sustained except to the extent conceded by respondent, determined an underpayment due to an understatement of income tax on each of petitioner's 2012 and 2013 returns that exceeded the greater of $5,000 or 10% of the tax required to be shown on the returns.[7] Respondent also produced a penalty approval form signed by an IRS supervisor demonstrating timely compliance with section 6751(b)(1). Respondent has thus carried his burden of production by demonstrating a "substantial understatement of income tax" and the required supervisory approval.

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith" with respect to it. The decision as to whether the taxpayer acted with reasonable

---

[7]Respondent's concessions do not change this result.

cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor in determining the existence of reasonable cause is the taxpayer's effort to ascertain his or her correct tax liability. Id. Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

Petitioner, a former business executive, failed to demonstrate that he kept adequate records for purposes of reporting the disputed items on the returns for the years at issue. Petitioner supplied no documentary evidence to credibly substantiate the various expenses and losses. Further, respondent offered sufficient evidence of unreported income from LNLI, and petitioner provided no reasonable defense for its exclusion. Accordingly, we sustain respondent's determination of section 6662(a) accuracy-related penalties for the years at issue.

To reflect the foregoing,

Decision will be entered under

Rule 155.